DISTRICT OF NEBRASKA

| | |
|---|---|
| SCOTT FLOYD GONNERMAN, ) | |
| ) | |
| Plaintiff, ) | 4:10CV3156 |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | MEMORANDUM OPINION |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court for review, pursuant to 42 U.S.C. § 405(g), of the decision of defendant Commissioner of the Social Security Administration ("SSA") denying social security disability benefits ("SSD benefits") to plaintiff. The Court finds the SSA's decision should be affirmed.

## I. FACTS

Plaintiff alleges he has been disabled since September 2005 due to a history of back impairments, including a back surgery he underwent in November 2005. Plaintiff was born in July 1960, graduated from high school, and worked as a truck driver and farmer. As of May 2008, plaintiff was 5'9" tall and weighed 270 pounds.

Plaintiff claims an automobile accident in 2000 caused him intermittent back pain and daily leg pain. In August 2005, John McClellan, M.D., a doctor at the Nebraska Spine Center, examined plaintiff. At this examination, plaintiff rated his

pain on a ten point scale as a three and stated changing body positions, sitting, walking and riding in a car alleviated his pain, but that bedrest, lying down, remaining in a prolonged position, and standing worsened his pain.  Plaintiff stated exercise, bending, lifting, and working did not affect his pain.  Dr. McClellan also noted plaintiff stood with good posture and walked with a normal gait.

Plaintiff returned to Dr. McClellan in September 2005 and rated his pain at a five out of ten.  Two months later, Dr. McClellan recommended plaintiff undergo a lumbar fusion surgery, which was performed on November 10, 2005.  According to treatment notes, plaintiff tolerated the surgery well.  Plaintiff "reported complete relief of back and leg pain" one day after the surgery.

Following the surgery, in December 2005, plaintiff reported to Dr. McClellan that he was extremely pleased and had "seen excellent relief of his leg pain."  Plaintiff rated his pain at zero to two out of 10, and stated "he would be very satisfied to spend the rest of his life this way."  Although plaintiff reported intermittent pain, he stated to Dr. McClellan that his pain was "very well controlled."

Plaintiff next saw Dr. McClellan in May 2006, where he reported "moderate to excellent relief of his leg pain" and stated he felt better than he had felt in several years.  Plaintiff reported his pain at two out of ten.  Dr. McClellan

-2-

noted plaintiff's back continued to limit his lifestyle and that he was unsure what type of work plaintiff could safely perform. Dr. McClellan stated plaintiff would not be able to return to truck driving or farming but suspected plaintiff would be able to perform sedentary work on a permanent basis.

      Plaintiff visited his primary-care provider, Trevor Hansen, P.A., in September 2006, complaining of arm pain.  Hansen noted plaintiff did not have decreased range of motion, joint pain, joint stiffness, joint swelling, muscle weakness, or swelling.

      Plaintiff visited Dr. McClellan again in November 2006. At this examination, plaintiff rated his pain at one out of ten. Plaintiff, however, did complain of tingling in his toes.  Dr. McClellan noted plaintiff had a normal gait and was "very pleased" with plaintiff's results.  Although plaintiff had some difficulty with bending and twisting, Dr. McClellan wrote plaintiff had seen "significant improvement in his pain."

      In December 2007, plaintiff again visited Hansen for a follow up examination.  Hansen noted plaintiff's condition had improved and that plaintiff was "feeling a lot better."  Hansen stressed plaintiff needed to lose weight, and plaintiff was prescribed medication for lumbar pain.  Later in December, Dr. McClellan examined plaintiff for a complaint of low back pain. Plaintiff, however, reported to Dr. McClellan that he had done

very well since his surgery and that he had "no significant ongoing low back pain other than a brief episode 1-2 months ago." Dr. McClellan observed plaintiff appeared comfortable, had a normal gait, and changed position without any obvious discomfort. Dr. McClellan commented plaintiff was "doing well" and stated plaintiff "reports no significant low back pain or leg pain."

In 2008, plaintiff filed for SSD benefits. In connection with the application, plaintiff completed a Daily Activities and Symptoms Report in July 2008. In describing his activities, plaintiff stated he routinely helped his wife prepare meals, got the mail, and watched television for several hours. Plaintiff also wrote he went to the grocery store with his wife, attended church weekly, occasionally helped with the dishes and laundry, gardened, hunted, played cards with friends, completed paperwork for his farm, and could drive at least ninety minutes at a time. Plaintiff also wrote he had "a lot more good days compare[d] to bad days," and on good days he did not have any symptoms.

In September 2008, plaintiff underwent an examination by Larry Birch, M.D., for a consultative disability examination. During the examination, plaintiff stated he had recently used a chainsaw to trim trees. Dr. Birch observed plaintiff was overweight with a "markedly limited" lower back. Plaintiff also underwent examination by Glen Knosp, M.D., a state agency

-4-

reviewing physician, who completed a Physical Residual Functional Capacity Assessment.  Dr. Knosp opined plaintiff's back impairments limited him to lifting no more than twenty pounds occasionally and ten pounds frequently, stand or walk no more than two hours in an eight-hour workday, and sitting six hours.  Dr. Knosp also opined plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl.  Dr. Knosp also acknowledged that plaintiff was overweight.

On September 26, 2008, the SSA denied plaintiff's SSD benefits claim.  Plaintiff thereafter requested reconsideration of the SSA's decision.  Another state physician, Jerry Reed, M.D., reviewed plaintiff's claim and affirmed Dr. Knosp's assessment of plaintiff.  Plaintiff then sought review from an administrative law judge ("ALJ").

Dr. McClellan examined plaintiff again in January 2009.  Plaintiff told Dr. McClellan that he could not stand for more than five minutes before he needed to lean on something and that he developed aches if he stood for periods longer than thirty minutes.  Dr. McClellan observed plaintiff walked with normal gait, had excellent posture, and was moderately obese.  In April 2009, Dr. McClellan completed a Physician's Statement in which he stated plaintiff could not perform light work or sedentary work.

A hearing took place on November 12, 2009, before an ALJ to review plaintiff's SSD-benefits claim.  Plaintiff

testified at the hearing that he owned a farm that was thirty-three miles from his home and that he traveled to the farm approximately three to four times per week.  In connection with the farm, plaintiff testified he worked approximately ten to fifteen hours per week overseeing the farm, selling crops, and buying fertilizer.  Plaintiff also testified he could sit for more than an hour before needing to change position, stand for up to fifteen minutes before needing to change position, could walk three blocks without rest, and could occasionally lift twenty to twenty-five pounds.  Plaintiff rated his pain at a three out of ten when not on medication.  Plaintiff also confirmed that he helps his wife with various domestic tasks and continued to hunt and play cards with neighbors.

A vocational expert next testified at plaintiff's hearing.  The ALJ posed the following hypothetical to the vocational expert:

> I want you to assume an individual the same age, education as [plaintiff]. [Plaintiff] was 45 years of age at the alleged date of onset on September 19, 2005, with a high school education.  Primary work is semiskilled to skilled job; tractor trailer driver and farming. . . . [T]he individual would be limited to the exertional level of light, sitting six out of eight, standing and walking six out of eight; however, due to the pain, back pain, and leg problems, burning, he requires a sit/stand option; able to lift 25/10;

> occasional postural limitations regarding climbing, balance, stooping, crawling, and bending; never ever able to climb ladders, scaffold, or ropes; frequent use of both hands; would have to avoid extreme exposure to cold weather.

Based on the hypothetical, the vocational expert opined that such an individual would not be able to perform his past work, but would be able to perform other jobs. The vocational expert gave examples of sedentary or modified light work positions plaintiff could hold: bookkeeping (sedentary); general office clerk (sedentary); and cashier (modified light).

On January 19, 2010, the ALJ issued an unfavorable opinion upholding the denial of plaintiff's SSD-benefits claim. The ALJ evaluated plaintiff's claim under the five-step sequential process. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since September 19, 2005, the alleged onset date of his disability.

At step two, the ALJ found plaintiff's impairments were severe. These severe impairments were status post lumbar fusion, degenerative disk disease, diffuse idiopathic skeletal hyperostosis, and obesity.

At step three, the ALJ found plaintiff's impairments did not meet one of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.

Next, the ALJ determined plaintiff had a residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) with a sit or stand option; no more than occasional balancing, bending, stooping, crawling, climbing stairs or ramps, or kneeling; never climbing ladders, scaffolds, or ropes; no more than frequent use of upper extremities; and avoiding moderate exposure to cold temperatures.  In making his determination regarding plaintiff's RFC, the ALJ found plaintiff not credible concerning the intensity, persistence, and limiting effects of his symptoms.  The ALJ granted probative weight to the expert opinion evidence offered by the state agency medical professionals and discounted the opinion of Dr. McClellan, which the ALJ characterized as "inconsistent with [Dr. McClellan's] own treatment records, the medical evidence taken as a whole, and [plaintiff's] statements and testimony."

At step four, the ALJ found plaintiff was unable to perform his past relevant work.

At step five, the ALJ found, given plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that the claimant could perform.  Specifically, the ALJ determined plaintiff could work as a bookkeeper, general office clerk, or cashier.  Thus, the ALJ determined plaintiff was not disabled and did not qualify for SSD benefits.

-8-

Plaintiff filed a Request for Review of Hearing Decision/Order on January 29, 2010, seeking review by the SSA's Appeals Council.  On July 7, 2010, the Appeals Council affirmed the ALJ's determination.  Plaintiff timely filed a complaint on August 10, 2010.

## II.  DISCUSSION

### A.  Standard of Review

When reviewing an ALJ's decision, the Court must determine whether the ALJ's decision complies with the relevant law and is supported by substantial evidence in the record as a whole.  *Martise v. Astrue*, 641 F.3d 909, 920 (8th Cir. 2011).  Substantial evidence is:

> relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence on the record as a whole, however, requires a more scrutinizing analysis.  In the review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.  Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* at 920-21 (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)).  "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's

-9-

findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).  The Court may not reverse the ALJ's decision merely because the Court would have come to a different conclusion.  *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011).  Plaintiff bears the burden of proving disability.  *Id.* at 615.

**B.   Substantial Evidence Exists Supporting the ALJ's Decision**

   1.   Plaintiff's Residual Functional Capacity

Plaintiff's first assignment of error addresses the ALJ's determination of his RFC.  The ALJ assessed plaintiff's RFC as capable of performing light work, as defined in 20 C.F.R. § 404.1567(b), with the following modifications:  sit or stand option; no more than occasional balancing, bending, stooping, crawling, climbing stairs or ramps, or kneeling; never climbing ladders, scaffolds, or ropes; no more than frequent use of upper extremities; and avoiding moderate exposure to cold temperatures.

Plaintiff's first argument against his RFC determination is the ALJ's RFC assessment was incorrect because the ALJ did not determine whether plaintiff could work in a job for a sustained period of time.  *See* SSR 96-8p, 1996 WL 374184, at *2 ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a *regular and continuing basis*, and the RFC assessment

must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). However, the ALJ acknowledged in his opinion that an RFC must account for a claimant's abilities to work on a "sustained basis." Further, during the hearing, the ALJ discussed plaintiff's capacity with the vocational expert in the context of an eight-hour workday. The Court concludes the ALJ properly assessed plaintiff's RFC in the context of being sustained work.

   Plaintiff's second argument against his RFC determination is the ALJ failed to address plaintiff's inability to stand or walk; but the ALJ determined plaintiff was capable of performing light work, which involves "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Based on the evidence in the record, substantial evidence supports a conclusion that plaintiff could stand or walk sufficiently to perform modified light work. The ALJ did not fail to account for plaintiff's ability to stand or walk.

   Plaintiff's third argument against his RFC determination is the ALJ improperly evaluated his RFC by not accounting for his obesity. However, the ALJ specifically stated plaintiff's obesity severely impaired plaintiff at step two. Also, the ALJ adopted the opinions of Drs. Birch and Knosp, who did consider plaintiff's obesity when they evaluated plaintiff,

making the ALJ's omission of plaintiff's obesity in the RFC evaluation harmless error at worst. *See Partee*, 638 F.3d at 863 (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006)).

Plaintiff fourth argument against his RFC determination is the ALJ's finding that plaintiff could stoop or bend is not supported by substantial evidence. But even if this is true, the ALJ harmlessly erred because one of the jobs the ALJ found plaintiff capable of performing was a cashier position, in which climbing, balancing, stooping, kneeling, crouching, and crawling are not present. *See* Dictionary of Occupational Titles 211.462-010 (4th ed. 1991).

The ALJ did not legally err in assessing plaintiff's RFC, and the ALJ's assessment of plaintiff's RFC is supported by substantial evidence.

2. Dr. McClellan's Opinions

Plaintiff's second assignment of error is that the ALJ impermissibly discounted the opinion testimony of Dr. McClellan, who opined plaintiff was not capable of performing sedentary of light work. Generally, a treating physician's opinion is entitled to substantial weight. *Martise*, 641 F.3d at 925 (quoting *Brown v. Atrue*, 611 F.3d 941, 951-52 (8th Cir. 2010)). However, an ALJ "may justifiably discount a treating physician's opinion when that opinion 'is inconsistent with the physician's

-12-

clinical treatment notes.'"  *Id.* (quoting *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009)).

In this case, Dr. McClellan's opinion regarding plaintiff's disability, which was given in 2009 after plaintiff filed for SSD benefits, was contrary to his previous treatment notes regarding plaintiff.  Soon after Dr. McClellan performed lumbar fusion surgery on plaintiff in 2005, Dr. McClellan noted plaintiff's pain had lessened and he anticipated plaintiff would be able to work in some form of sedentary job.  A year later, in November 2006, Dr. McClellan wrote plaintiff had seen "significant improvement in his pain" and was "very pleased" with plaintiff's results.  A year later, in December 2007, Dr. McClellan wrote plaintiff had experienced "no significant ongoing low back pain other than a brief episode 1-2 months ago."  Dr. McClellan also wrote plaintiff was "doing well," appeared comfortable, had a normal gait, and changed position without obvious discomfort.  These ongoing positive reviews of plaintiff's condition are inconsistent with Dr. McClellan's statement in 2008 that plaintiff was incapable of working in a sedentary or light work job, and the ALJ was entitled to discount Dr. McClellan's opinion.

   3.   Vocational Expert Testimony

Plaintiff's final assignment of error is that the ALJ improperly relied on the testimony given by the vocational expert

at the hearing.  The vocational expert testified that, given the limitations the ALJ identified in the hypothetical, plaintiff could work as a bookkeeper, general office clerk, or cashier.  Plaintiff argues he is incapable of performing these jobs (bookkeeper and cashier) or they are not full-time positions (general office clerk).  After reviewing the record as a whole, the Court finds substantial evidence supports the ALJ's conclusion that plaintiff could work as a cashier.  Because the ALJ properly determined there was other work that plaintiff could make an adjustment to perform, the ALJ properly determined plaintiff was not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

### III.  CONCLUSION

Substantial evidence in the record as a whole supports the ALJ's determination that plaintiff was not disabled, and the ALJ's decision complies with the relevant law.  The SSA's denial of plaintiff's SSD-benefits claim will be affirmed.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 1st day of August, 2011.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court